**LANCE ROOF INSPECTION
SERVICE, INC.**

v.

**Michael D. HARDIN.**

**Civ. A. No. H–86–111.**

United States District Court,
S.D. Texas,
Houston Division.

June 16, 1986.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, JR., District Judge.

### I. *Introduction*

Plaintiff, Lance Roof Inspection Service, Inc. ("Lance"), invoking this Court's diversity jurisdiction, commenced the above-referenced cause of action on January 6, 1986, against the Defendant, Michael D. Hardin ("Hardin"), seeking equitable relief and damages for breach of an employment contract, and breach of fiduciary duty.

On May 8 and 9, 1986, a preliminary injunction hearing was tried to the Court. Having heard all of the testimony, and having carefully reviewed the documentary evidence, this Court hereby enters these Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Fed.R.Civ.P., concluding that Lance is not entitled to the entry of a preliminary injunction because the restrictive covenant at issue has expired, and Plaintiff has failed to establish that Defendant has competed unfairly or breached any fiduciary duty to his former employer which arises under Texas law.

### II. *Findings of Fact*

#### A. *The Parties*

1. Plaintiff, Lance, a Georgia corporation which has its principal place of business in Atlanta, Georgia, is engaged in the business of inspection and consultation concerning roof construction and repair.

2. Defendant, Hardin, is an individual who resides in Harris County, Texas.

3. In the early 1980's, Lance performed substantial services for the Trammell Crow Company ("Trammell Crow") in the Houston area. To better service Trammell Crow, Lance opened a branch office. Initially, Trammell Crow was Lance's only client in the Houston area. Although Lance has since developed other clients, Trammell Crow continued to be Lance's most important client until December 31, 1985. (Testimony of Lance; Hardin).

4. Hardin was employed by Lance in 1981, and served as the general manager of the Houston office until December 31, 1985. The company office was located in Hardin's home. Hardin's wife was salaried as the company's secretary.

5. In September of 1985, the parties began negotiating concerning Defendant's continued employment with Lance. Following considerable, unsuccessful efforts to negotiate mutually acceptable terms of employment, Hardin made the decision to start his own roof inspection and consultation business, and to enter into competition with Lance after the termination of his contract of employment.

6. Hartin started his own business under the name of Michael Hardin & Associates in January of 1986. Since that time, Hardin has performed roof inspection and consultative services for Trammell Crow, as well as for other former clients of Lance.

7. Since January 1, 1986, Lance's once thriving business in the Houston area has been threatened by the competition engendered by Hardin. (Testimony of Lance).

B. *Plaintiff's Breach of Contract Claims*

8. Lance and Hardin first entered into a contract of employment on January 1, 1981. (Plaintiff's Exhibit 1).

9. The original employment contract was drafted by Lance with the assistance of counsel. (Testimony of Lance).

10. The original contract provided for an employment term of two years, which was terminable at will by either party upon sixty (60) days' notice. Paragraphs 4 and 5 of this contract provide in pertinent part, as follows:

4.

The term of this Agreement shall be for two (2) years from the date hereof unless sooner terminated as hereinafter provided.

5.

Either party hereto may terminate this Agreement at any time, with or without cause, by giving the other party sixty (60) days' written notice by personal delivery of such notice to the other party or by certified mail, return receipt requested, postage prepaid, said notice being effective three (3) calendar days following the date on which such notice is deposited in the mail.

11. The contract, as originally tendered to Hardin, also contained a restrictive covenant that would have restricted Hardin from competing with Lance within one hundred (100) miles of the main post office of Houston, Texas, for a period of thirty-six (36) months from the date of the agreement.

12. Before signing the initial contract, however, Hardin, who was unrepresented by counsel, requested that the thirty-six (36) month restriction be shortened to twenty-four (24) months. (Testimony of Hardin; Lance).

13. Hardin requested amendment of the restrictive convenant because he did not want to be obligated to Lance or restricted from competitive employment after the twenty-four month term of his employment had expired. (Testimony of Hardin).

14. The change in the restrictive covenant from thirty-six (36) months to twenty-four (24) months was agreed to by all parties and was initialed. (Testimony of Hardin; Lance). Paragraph 6 of the contract, as modified, provides in pertinent part as follows:

6.

(a) EMPLOYEE EXPRESSLY COVENANTS AND AGREES, which covenant and agreement is of the essence of the

Agreement, that he shall not for a period of 24 months following the date of this Agreement (regardless of whether this Agreement is terminated with or without cause), either for himself or on behalf of any other person, persons, partnership, association or corporation, engage as a consultant, salesman, sales agent, partner, manager, officer, director or shareholder in the business of the Employer (that is, the roof inspection and consulting business) within a radius of ONE HUNDRED (100) miles of the Main Post Office in Houston, Texas.

15. The parties operated under the original contract until it terminated on December 31, 1982. Thereafter, the parties operated without a contract until March 9, 1983, when they entered into a letter agreement which extended the term of the original contract until December 31, 1985. The letter agreement specifies three amendments to the original contract, and states as follows:

The following amendments are to be made to the contract between Lance Roof Inspection Service, Inc. and Mike D. Hardin.

1. Overhead is to be based on 5% of net cost, not to exceed $10,000.00.

2. Percentage of net profit to be raised to 25% of profits over $50,000.00.

3. Contract is to be extended through December 31, 1985.

16. The "date of the agreement," referred to in the restrictive covenant, was regarded by the parties to be the First day of January. (Testimony of Lance; Hardin). This finding is supported by several facts including the following: (a) the original contract expressly states that the agreement was entered into as of the First day of January; (b) January 1st was regarded as the "date of the agreement" even though the original contract, like the letter amendment, was actually signed on a later date, and (c) the original two year employment period terminated on December 31, 1982, and the extended three year period terminated on December 31, 1985. (Plain-

tiff's Exhibit 1; Testimony of Lance; Hardin).

17. During the negotiations that led to the extension agreement of March 9, 1983, there was no discussion concerning the restrictive covenant. (Testimony of Hardin; Lance).

C. *Plaintiff's Unfair Competition Claims*

18. During the five years that Hardin was the general manager of Lance's Houston office, he had complete control of the company's local business. All of the company's files were located at Hardin's home, and were totally accessible to him.

19. In December of 1985, Hardin copied all of the company's files without Lance's permission. However, these file copies were voluntarily returned to Plaintiff prior to the filing of the instant law suit. (Testimony of Hardin; Lance).

20. Furthermore, there is no evidence that Defendant ever used such file copies to compete unfairly, even if they do contain trade secrets, as Plaintiff contends.

21. Although Lance alleges that Hardin has used a confidential customer list, Plaintiff has not introduced any customer list into evidence, and has not tendered such a list for *in camera* inspection. Moreover, there is scant evidence to support a conclusion that such a list, if it exists, is secret and, therefore, entitled to protection.

22. Perhaps, Plaintiff's most significant complaint arises from Trammell Crow's decision to employ Defendant rather than itself. However, it is a matter of common knowledge within the industry that Trammell Crow requires roof consultation and inspection services, and has been a client of Lance. Moreover, the types of customers who use roof inspection services, such as, architects, building owners, building managers, contractors, and developers, can be readily found in the yellow pages of a telephone directory. (Testimony of Hales).

23. Al Augustine, a partner in Trammell Crow in charge of Houston operations, learned in the Fall of 1985 from Bill

Hearne, co-owner of Lance, that Defendant was planning to leave the employment of Lance. (Testimony of Hardin; Augustine).

24. In response to pressure from Hearne to keep Trammell Crow's business with Plaintiff, Augustine sent a letter stating that Lance could continue on jobs currently in progress, but that future decisions regarding roof inspections would be made on a case by case basis. (Plaintiff's Exhibit 2).

25. Thereafter, Augustine removed Lance from a job and gave that job to a third roof inspector, Professional Inspection Services. However, Augustine has not given any roof inspection business to Hardin. (Testimony of Augustine).

26. After Lance refused to continue working on certain jobs, Defendant was asked to perform services immediately for Trammell Crow by David Darilek in early January of 1986. (Testimony of Darilek; Hardin; Lance).

27. Trammell Crow's decision to employ Hardin is premised upon a variety of factors including the pressure placed upon Trammell Crow by Plaintiff, satisfaction with the past performance of Lance's Houston office when it was under the management of Hardin, personal confidence in Hardin, and resentment revolving around the commencement of the instant lawsuit. Since Trammell Crow's representatives feel that Plaintiff has attempted to interfere with its freedom of choice, it is not certain that Lance could continue to perform services for Trammell Crow in Houston, even if competition by Hardin were eliminated. (Testimony of Augustine; Darilek).

28. Two former Lance employees who are presently employed by Hardin, Hobson Jackson and Bob Cerminar, were not solicited by Defendant to leave their employment with Lance. Rather, both employees quit working for Lance prior to seeking employment with Hardin, because Lance asked them to sign a written contract containing a restrictive covenant, after they had worked for over five years without one, and for other personal reasons. Lance did not have a written employment contract with either employee. (Testimony of Jackson; Cerminar).

29. Plaintiff has not produced sufficient evidence to justify a finding that Defendant solicited business away from Lance during the term of his employment or otherwise usurped Plaintiff's business opportunities.

30. Rather, the evidence overwhelmingly refutes Plaintiff's allegations that Defendant has breached his fiduciary duty to Lance. The unequivocal testimony of all of the witnesses, even those witnesses subpoenaed by Plaintiff, supports the contrary finding that Defendant handled the transition from employment by Lance to the opening of his own business in a professional and fair manner. (Testimony of Augustine; Darilek; Carter; Munson; Cerminar; Jackson; Agliata, and Rowe).

31. According to general practice within the industry, parties involved in roof consultation transactions frequently operate pursuant to oral contract. Consequently, there is no firm expectation on the part of either party that the roof consultant who develops specifications in connection with a consultation will be employed to perform the more profitable inspection work which follows. Companies which pay for roof consultations generally regard the specifications developed in connection therewith to be their own property. Consequently, it is not unusual for roof consultants to work from specifications developed by other consultants when performing inspection services. Under these circumstances, this Court cannot find that the specifications developed by Lance rise to the level of trade secrets, or that Defendant, in performing inspection work on buildings previously serviced by Lance, has usurped either the legitimate expectations or the business opportunities of Lance. (Testimony of Hardin; Augustine; Darilek).

32. This Court finds that Hardin has not breached any fiduciary obligations to Lance which brought about an unfair competitive advantage in the marketplace. In-

stead, Hardin has relied upon the skill, contacts, expertise, and knowledge that he has acquired during the years that he has been employed in the business of roof inspection and consultation.

### III.  *Conclusions of Law*

1.  This Court has jurisdiction of the parties and the subject matter based upon diversity of citizenship.  28 U.S.C. § 1332.

2.  Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a).

3.  Texas law governs the controversy between the parties.

4.  Plaintiff applied for injunctive relief under two separate and distinct legal theories:  (a) a contract theory for breach of a restrictive covenant;  and (b) various common law theories pertaining to trade secrets, fiduciary relationships, and usurped business opportunities.  This Court concludes that neither theory will support Lance's claim for injunctive relief, as applied to the circumstances of the instant case.

5.  In the absence of a contractual provision restricting competition, a person has a right to resign his employment and go into business in direct competition with his former employer.  *Gaal v. Basf Wyandotte Corp.*, 533 S.W.2d 152, 154 (Tex.Civ.App.—Houston 1976, no writ), *citing, Ledel v. Bill Hames Shows, Inc.*, 367 S.W.2d 182 (Tex.Civ.App.—Fort Worth 1963, no writ).

6.  This Court cannot expand the scope of a restrictive covenant greater than the period of time recited in the covenant nor can it be extended through custom or inference.  *Rimes v. Club Corporation of America*, 542 S.W.2d 909, 912 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.);  *Markwardt v. Harrell*, 430 S.W.2d 1 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.).

7.  The terms of the agreement between the parties are to be given their literal and ordinary meaning.  *Tower View, Inc. v. Hopkins*, 679 S.W.2d 632, 635 (Tex.Civ.App.—San Antonio 1984, writ ref'd n.r. e.);  *Travis Heights Imp. Assn. v. Small*, 662 S.W.2d 406 (Tex.Civ.App.—Austin 1983, on writ).

8.  Both parties take the position, and this Court concludes, that the provisions of the restrictive covenant contained in the contract at issue are unambiguous. Nevertheless, the Court may permit parole evidence for the purpose of applying the contract to its subject matter, even though it is unambiguous.  The evidence can explain any doubtful relationship of the writing to the relations of the parties and the subject matter of the contract.  *Texas Utilities Fuel Company v. First National Bank*, 615 S.W.2d 309, 312 (Tex.Civ.App.—Dallas 1981, no writ);  *Maxwell v. Lake*, 674 S.W.2d 795, 801 (Tex.Civ.App.—Dallas 1984, no writ).

9.  If the contract were ambiguous, any disputes concerning the construction of the contract must be resolved against the drafter, Lance.  *Channel 20, Inc. v. Worldwide Tower Services*, 596 F.Supp. 928 (D.Tex.1984);  *Kincaid v. Gulf Oil Corp.*, 675 S.W.2d 250, 256 (Tex.Civ.App.—San Antonio, writ ref'd n.r.e.).

10.  Applying these general principles of interpretation to the contract at issue, this Court concludes that the contract, as written, makes legal, logical and grammatical sense, and must therefore be enforced according to its express terms. *George v. El Paso County Water Control and Improvement Dist.*, 332 S.W.2d 144, 147–48 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.);  *Tenant v. Buratti and Montadon*, 215 S.W.2d 201, 202 (Tex.Civ.App.—Austin 1948), *aff'd*, 147 Tex. 536, 218 S.W.2d 842.

11.  The practical effect of the restrictive covenant, as originally drafted and proposed to Hardin, would have been to prohibit Hardin from competing with Lance during the two (2) year term of his employment, and for an additional twelve (12) months thereafter.

12.  The change proposed by Hardin limited the restrictive covenant to a two (2) year period which corresponded with his term of employment.  Thus, the practical

effect of the amendment restricted Defendant from competing with Lance only during the employment term, but did not restrict Defendant after the expiration of the two year contractual period.

13. Since the original contract was subject to termination at will upon sixty (60) days' notice, the amended covenant operated as an inducement to deter Defendant from terminating his employment prior to the expiration of the contract term, and would have prevented competition during that period if Defendant had terminated his contract prior to the term's expiration.

14. Accordingly, the literal language of the restrictive covenant which states that the employee (Hardin) covenants not to compete in the roof inspection and consulting business "for a period of 24 months *following the date of this agreement*" must be enforced as written, and not as reformed, in accordance with Lance's argument regarding how the covenant should read—"following the date of termination."

15. The introduction of extrinsic evidence, including the contract drafted by Lance in 1985 (Defendant's Exhibit 4) and Hardin's testimony regarding his intention in negotiating the amendment of the original contract, only reinforces this Court's conclusion that the covenant in question must be construed literally.

16. Defendant's argument that the extension of the original employment contract by letter agreement did not operate to extend the restrictive covenant must be rejected. Since the parties specifically stated the changes which were made in the original contract, the more reasonable assumption is that the parties intended all of the other provisions of the contract, as originally written, including the restrictive covenant, as amended, to govern their continuing contractual relationship.

17. This Court concludes that the "date of the agreement," referred to in the restrictive covenant, was regarded by the parties to be January 1st. Thus, the date that the letter agreement was entered, March 9, 1983, does not control the interpretation of the restrictive covenant.

18. Construing the amended language of the restrictive covenant literally, and resolving all ambiguities against Lance, the drafter of the contract, this Court concludes that the restrictive covenant, as revived by the letter agreement, restricted Hardin from competing with Lance between January 1, 1983 (the date of the agreement) and December 31, 1984, or for twenty-four (24) months "following the date of the agreement."

19. If the restrictive covenant, as applied to the extended agreement, were to be altered to conform to the intentions of the parties, as expressed in the original contractual amendment, the length of the restrictive covenant would be extended for the full term of Hardin's employment through December 31, 1985, but no further.

20. In any event, the restrictive covenant, having expired, does not prohibit Hardin from competing with Lance because it is of no continuing legal force.

21. In order to be entitled to protection, a customer list must be secret. The list must not be generally known or readily ascertainable from independent sources. *See Mercer v. C.A. Roberts Co.,* 570 F.2d 1232 (5th Cir.1978); *Rimes v. Club Corp. of America,* 542 S.W.2d 909 (Tex.Civ.App.—Dallas 1976, writ ref'd, n.r. e.); *SCM Corp. v. Triplett Company,* 399 S.W.2d 583 (Tex.Civ.App.—San Antonio 1966, no writ); *Gaal v. Basf Wyandotte Corp.,* 533 S.W.2d 152 (Tex.Civ.App.—Houston (14th Dist.) 1976, no writ).

22. It appears that the names of Lance's customers are either commonly known within the industry, or readily ascertainable. Thus, Plaintiff has failed to present sufficient evidence in support of its allegations that Defendant has breached his fiduciary duty by unfairly taking advantage of Lance's proprietary interest in its customer list.

23. Similarly, there is insufficient evidence to support the conclusion that Plaintiff possesses a proprietary interest in specifications or pricing structures which is

entitled to the protection accorded trade secrets.

 24. Hardin, in competing with Lance, is entitled to use the skills and experience that he has acquired through the years. *Auto Wax Co., Inc. v. Byrd,* 599 S.W.2d 110, 111–12 (Tex.Civ.App.—Dallas 1980, no writ); *SCM Corp. v. Triplett Company,* 399 S.W.2d 583 (Tex.Civ.App.—San Antonio 1966, no writ); *Welex Jet Services, Inc. v. Owen,* 325 S.W.2d 856, 858 (Tex.Civ.App.—Fort Worth 1959, writ ref'd, n.r.e.); Restatement (2d) of Agency, Section 396 (1958).

25. As demonstrated by this Court's factual findings, the instant case does not fall within the parameters of *Molex, Inc. v. Nolen,* 759 F.2d 474 (5th Cir.1985), or *Zoecon Industries v. American Stockman Tag Co.,* 713 F.2d 1174 (5th Cir.1983), the two cases primarily relief upon by Plaintiff in support of its common law fiduciary duty claims.

26. This Court concludes that Lance has not prevailed on the merits of its claims against Hardin. Moreover, Lance has failed to clearly establish the elements required for issuance of a preliminary injunction: (a) a substantial likelihood that the Movant will prevail on the merits; (b) a showing that the Movant will suffer irreparable injury unless the injunction issues; (c) proof that the threatened injury to the Movant outweighs whatever damage the proposed injunction may cause the opposing party, and (d) a showing that the injunction, if it is issued, would not be adverse to the public interest. *FMC Corp. v. Varco International, Inc.,* 677 F.2d 500 (5th Cir.1982); *Southern Monorail Co. v. Robbins & Meyers, Inc.,* 666 F.2d 185, 186 (5th Cir.1982); *Compact Van Equipment Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir.1978).

27. In the event that the foregoing Findings of Fact also constitute Conclusions of Law, they should be regarded as such. In the event that the Conclusions of Law also constitute Findings of Fact, they are adopted as such.

### IV. *Conclusion*

This Court concludes that Plaintiff is not entitled to the entry of a preliminary injunction which restricts Defendant from competing with Plaintiff in the roof inspection and consultation business within the Houston area.