**WESTERN MEDICAL CONSULTANTS, INC., an Oregon corporation, Plaintiff,**

**v.**

**Shannon L. JOHNSON and Medical Evaluations of Alaska, Inc., an Alaska corporation, Defendants.**

**Civ. No. 91–6018–RE.**

United States District Court, D. Oregon.

Aug. 9, 1993.

Robert E. Maloney, Jr., Charles F. Hudson, Lane Powell Spears Lubersky, Portland, OR, for plaintiff.

Robert C. Weaver, Jr., Christopher P. Koback, Garvey, Schubert & Barer, Portland, OR, for defendants.

## OPINION

REDDEN, Chief Judge:

### BACKGROUND

Plaintiff Western Medical Consultants (Western Medical) is an Oregon corporation engaged in the provision of independent medical examination (IME) services. Specifically, plaintiff arranges for the examination of patients by physicians with expertise in a variety of specialties.

Defendant Shannon Johnson is a former employee of Western Medical. After her employment with Western Medical ended, Johnson moved to Alaska and began operating defendant Medical Evaluations of Alaska, Inc. (MEA). Like Western Medical, MEA also provides IME services.

This matter was tried to the court on July 27–29, 1993. Plaintiff claims breach of fiduciary duty, breach of contract, misappropriation of trade secrets, and interference with business relations in connection with defendants' Alaska IME operation.

Johnson started working for Western Medical on or about May 9, 1989. At that time she was given several documents including a written confidentiality agreement that included a covenant not to compete. Johnson signed the agreement.

In early 1990, Johnson was promoted to the salaried position of marketing representative. By the summer of 1990, Johnson was involved with Western Medical's efforts to expand its business into Alaska. On October 24, 1990, Johnson travelled to Anchorage, Alaska, to market Western Medical's services and make preliminary investigations into the feasibility of Western Medical opening an office in Alaska. Johnson felt that her marketing efforts on behalf of Western Medical were enthusiastically received and she so reported to her employer. Johnson asked for authorization to return to Anchorage at the end of November 1990 to attend a monthly meeting of the Alaska Adjusters Association. She was to make a presentation to the Association on the services provided by Western Medical. Authorization was not forthcoming. Johnson purchased her own airline tickets to Anchorage on December 4, 1990. Johnson admitted that she wanted to check on her own opportunities to open an IME business because her employer was not interested. Western Medical then authorized Johnson to attend the Alaska Adjusters Association meeting. Although it was too late to make the presentation Johnson attended on behalf of her employer and distributed their brochures.

Upon her return from her second trip, Johnson became convinced that Western Medical was not interested in developing the Alaska market, and on November 28, 1990, decided to terminate her employment. On November 29, 1990, Johnson informed her sister and roommate, also an employee of Western's, that she was leaving and going to Alaska to start an IME business.

On Friday, November 30, 1990, Johnson announced her resignation from Western Medical. She was asked to return on Monday, December 3, 1990 to review her marketing efforts in Alaska. Johnson agreed to do so. On either December 1 or 2, 1990, Johnson came to Western Medical to copy the American Medical Association's Guide to the Evaluation of Permanent Impairment, Third Edition (Revised), for a physician who performed examinations for Western Medical. That book can be purchased by the public.

On December 3, 1990, prior to departing from Western Medical, Johnson placed all of her personal belongings in a box and had it inspected by an agent of Western Medical. The box contained none of Western Medical's property. Johnson also attempted to brief the marketing representative who was going to continue with plaintiff's responsibilities. Due to that person's schedule, the two did not meet.

Johnson signed Alaska Articles of Incorporation for MEA on December 14, 1990, and opened its office at that time. MEA began

arranging examination times in December 1990, and began conducting IMEs in January 1991.

## DISCUSSION

### 1. *Breach of Contract*

Plaintiff first claims that defendant breached her employment contract with plaintiff by opening a competing business in Alaska when plaintiff was in the process of opening its office. Defendant signed an employee confidentiality agreement which included a covenant not to compete with plaintiff for a period of five (5) years subsequent to her termination of employment with plaintiff. Under the terms of the agreement defendant was required not to use any "ideas, techniques, processes or know-how" to compete with Western within a 50 mile radius of any Western office, including part-time offices. Defendant was also prohibited from soliciting employees of Western. Defendant was also prohibited from using Western's confidential information and from disclosing it to third parties, including her own corporation, so long as the information remained confidential.

■ I first find that the non-competition agreement is valid and binding under Oregon law. *See Eldridge v. Johnston,* 195 Or. 379, 403, 245 P.2d 239 (1952); and ORS 653.295. However, I find that defendant did not breach her employment agreement with the plaintiff. I find no evidence that plaintiff had an IME business in Anchorage when defendant opened her Anchorage business in December 1990. Defendant actually began conducting IMEs in January 1991. Western Medical first ordered supplies and other items for an office in Alaska in January 1991. Western Medical did not schedule its first IME in Alaska until January 25, 1991.

There is evidence that Western Medical discussed opening an office in Alaska prior to January 1991, but I find no evidence that Western Medical took any steps to open that office other than sending defendant to Anchorage on two occasions to research a potential client base and to do some marketing. I find it impossible for defendant to have violated the covenant not to compete, as no Western Medical office existed in Anchorage when defendant commenced her operations.

### 2. *Misappropriation of Trade Secrets and Proprietary Information*

■ To establish a claim under Oregon's Uniform Trade Secrets Act, ORS 646.460, a plaintiff must demonstrate that (1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation.

■ I find that plaintiff has failed to sustain its burden of proof on this issue. I find no evidence that trade secrets existed or if they did, that they were misappropriated by the defendant. I find no evidence that defendant utilized specialized, unique or confidential information in her competition with Western Medical after leaving its employ. The evidence demonstrated that defendant merely utilized her general experience and knowledge as to her previous marketing efforts. Defendant, while employed at Western Medical, learned what groups consumed IME services, how to market these services to those consumers, what services needed to be provided and how to provide those services in a profitable manner. That knowledge arose from general know-how, skill and experience gained while employed by plaintiff. An employee may use those attributes in later competition with a former employer.

■ I find no evidence that defendant left Western Medical with any confidential customer list. Further, any customer information defendant may have had does not qualify as a trade secret. *Lance Roof Inspection Service, Inc. v. Hardin,* 653 F.Supp. 1097 (S.D.Texas 1986). In *Lance,* the court determined that the customer information claimed by plaintiff as a trade secret did not qualify for trade secret protection. The court held that in order for customer information to be protected as a trade secret, the information had to be secret, not generally known and not readily ascertainable from independent sources. *Id.* at 1102 (citations omitted). Since the customer lists and information claimed as secret by the plaintiff in *Lance* were either commonly known within the in-

dustry or readily ascertainable they were not granted trade secret protection. *Id.*

Similarly, I find that the customer information alleged to be a trade secret in this case is commonly known in the industry and readily ascertainable through the yellow pages of any telephone book or through inquiry to the appropriate state insurance agency.

■ As to data concerning Western Medical's pricing and cost structures, I find that defendant did not appropriate any such information. Any knowledge defendant has in this area is general information, knowledge and expertise gained through the ordinary course of her employment by plaintiff. Moreover, due to the competitive nature of the IME business, I find evidence that pricing information of the various IME firms is widely known in the industry.

■ As to formulas or patterns reflected in Western Medical's impairment rating forms, I find no appropriation by defendant. Further, I find that this information is in the public domain as exhibited by the American Medical Association's "Guide to the Evaluation of Permanent Impairment," Third Edition (Revised), which can be purchased from the American Medical Association. The evidence demonstrated that all IME services provide rating forms utilizing these guidelines, rendering each company's forms similar.

■ As to marketing and other techniques of Western Medical, again I find no appropriation by defendant. Any knowledge defendant may have in this area is general information, knowledge and expertise gained through the ordinary course of her employment by plaintiff.

Defendant did not utilize secret, innovative or confidential information of plaintiff's in commencing her Alaska business. I find no misappropriation of trade secrets or proprietary information by the defendant. Plaintiff's claim for Misappropriation of Trade Secrets and Proprietary Information fails for lack of evidence.

### 3. *Breach of Fiduciary Duty*

■ Plaintiff's final claim alleges that defendant breached her fiduciary duty and duty of loyalty to plaintiff. An agent owes her principal a fiduciary duty of loyalty; she may not compete with her principal during the course of her employment concerning the subject matter of her agency. Restatement (Second) of Agency § 393 (1958). The agent may, however, compete after the termination of her agency and may take steps in preparation to compete before the termination of her agency. *Id.* at comment e. Further, the agent cannot utilize confidential information of the principal in her subsequent competition with that principal, nor may the agent solicit customers before the termination of her agency. *Id.* An agent is "subject to a duty to use reasonable efforts to give her principal information which is relevant to affairs entrusted to her...." Restatement (Second) of Agency § 381 (1958).

■ I find that defendant did not breach her fiduciary duty to her employer. On October 24, 1990, defendant first travelled to Alaska on behalf of Western Medical. Prior to leaving on that trip, she disclosed to Western Medical in a written memorandum all of the potential customers she hoped to visit. Upon her return, defendant prepared a written report concerning her efforts in Alaska. That report contained complete and detailed information regarding her findings as to cost information, available physicians, and logistical concerns of opening an office in that state. This report also contained complete disclosure of a potentially strong market for Western Medical's services. Defendant disclosed her projection as to the number of IMEs that Western Medical might be able to provide in that market so that revenues might be estimated.

Defendant then travelled to Alaska on November 24–27, 1990, in order to attend the Alaska Adjusters Association meeting and make a presentation at that meeting regarding Western Medical's services. Initially, Western Medical denied defendant authorization to travel to Alaska for that purpose. Just prior to the date of the meeting, however, Western Medical changed its position and authorized defendant to travel to Alaska.

Due to the late date of authorization defendant was not able to make a presentation at the meeting to the Adjusters Association, but was able to pass out brochures and marketing information after the meeting. The only evidence of other business conducted by defendant during that visit to Alaska consisted of an inspection of a potential office site for Western Medical.

Defendant was required to use reasonable efforts in disseminating information to plaintiff that was relevant to the affairs entrusted to her by plaintiff. I find that the report submitted by defendant regarding her first trip to Alaska was a complete and full disclosure of her activities there. Defendant resigned shortly after her second trip to Alaska. Ben Koerper of Western Medical asked her to return the following Monday as he did not have time to tie up "loose ends" on the day of her resignation. Koerper indicated that he wanted defendant to meet with Teresa Crane, the person who was to take over defendant's responsibilities, to discuss the status of defendant's efforts in Alaska. That following Monday, defendant returned to Western Medical but was unable to meet with Crane due to Crane's unavailability. Defendant told Koerper on that Monday that she had not yet debriefed Crane fully on the Alaska project but that Crane should review her report of the first trip and call her at home if she had further questions. I find that defendant used reasonable efforts in providing Western Medical with all of the information she possessed as to the Alaska market and did not violate any fiduciary duty in this regard.

I find that defendant had no record of "customer contacts" as alleged by plaintiff. The evidence demonstrated that defendant found the pool of potential customers through two sources: (1) the telephone book's "yellow pages;" and (2) a listing from the Alaska Insurance Division. These are both publicly accessible resources. There is no evidence that defendant hid customer contacts from Western Medical.

I find no evidence that while travelling to Alaska in October and November, 1990, defendant failed to act strictly on behalf of Western Medical. Further, I find no evidence that while in Alaska, defendant did not market Western Medical's services exclusively. There is no evidence that defendant ever indicated to any existing or potential customer that she would be starting a business in competition with Western Medical, nor did she in any way indicate that these entities should look to any entity other than Western Medical for IME services.

■ Plaintiff alleges that defendant breached the agreement, Section I, paragraph (2) by hiring away her sister from Western Medical. Defendant's sister worked at Western Medical as a receptionist. She was defendant's youngest sister and also her roommate. Defendant testified that when she made the decision to leave Western Medical, she asked her sister if she would also like to come to Alaska to live with her. I find that plaintiff never seriously urged that this employee, a receptionist, had a unique or special value to the company. I find no violation of the agreement when defendant asked her sister if she wanted to accompany her to Alaska.

■ The extent of defendant's preparatory actions before resigning from Western Medical was purchasing air fare with her personal funds and utilizing general logistical information and know-how acquired through her general employment and experience with plaintiff. This does not violate the Restatement (Second) of Agency § 393 comment e (1958). The fact that defendant did not inform Western Medical that she might compete in the Alaska market does not render her commencement of business in that state unfair competition or a breach of fiduciary duty.

The evidence shows that defendant used reasonable efforts to market Western Medical's services during both of her trips to Alaska and that defendant provided or attempted to provide Western Medical with the information relevant to her assignment to research the Alaska market. I find no breach of defendant's duty of loyalty to the company. *See* Restatement (Second) of Agency §§ 381, 393, 396 (1958).

*CONCLUSION*

After a careful and thorough evaluation of all the evidence in this case including the testimony of witnesses, trial memorandums and briefs, and the case law cited to this court by the parties, I find for the defendants on all claims at issue.