**WESTERN MEDICAL CONSULTANTS, INC., an Oregon corporation, Plaintiff–Appellant,**

v.

**Shannon L. JOHNSON; Medical Evaluation of Alaska, an Alaska corporation, Defendants–Appellees.**

No. 93–35862.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1995.

Decided April 8, 1996.

---

Charles F. Hudson, Jeffrey M. Batchelor, Lane Powell Spears Lubersky, Portland, Oregon, for plaintiff-appellant.

William Artus, Artus, Choquette, & Williams, Anchorage, Alaska, for defendants-appellees.

Before: FLETCHER,* CANBY, and REINHARDT, Circuit Judges.

## OPINION

CANBY, Circuit Judge:

Western Medical Consultants, Inc. ("Western"), an Oregon corporation that provides independent medical examination ("IME") services,[1] appeals the district court's judgment after a bench trial. The court denied Western's request to enjoin Shannon Johnson, a former Western employee, from operating a business in competition with Western's IME business in Alaska.[2] *Western Medical Consultants, Inc. v. Johnson,* 835 F.Supp. 554 (D.Or.1993).

On appeal, Western contends that, in opening her Alaska IME business, Johnson breached the covenant not to compete contained in her employment contract with Western, breached a fiduciary duty she owed to Western, and misappropriated trade secrets. We affirm.

---

* Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Fletcher was drawn as a replacement. Judge Fletcher was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel.

1. As an IME business, Western arranges for the examination of patients by physicians with expertise in a variety of specialties.

2. Western voluntarily dismissed its claims for damages.

## BACKGROUND

In May 1989, Western hired Shannon Johnson as a full-time employee. Before she commenced her employment at Western, Johnson signed an Employee Confidentiality Agreement. The agreement included a covenant not to compete with Western, for five years after termination of her employment, within a radius of fifty miles from any Western office.

During the Summer of 1990, Western became interested in expanding its business to Alaska. Johnson was assigned to market Western IME services to customers in Alaska. In October 1990, Western sent Johnson to Anchorage to research the market potential. Before her trip, she submitted a memorandum listing her potential contacts. In Anchorage, Johnson assembled a list of prospects by looking in the yellow pages and calling potential customers. The purposes of her trip were to promote use of Western's IME services in Oregon by Alaska customers, as well as to explore possibilities for a Western office in Alaska. When she returned from Alaska, she prepared a written memorandum of her findings and recommendations. On November 22, 1990, Johnson bought a personal plane ticket to Alaska with a departure date of December 4, 1990.

On November 24–27, 1990, Johnson travelled to Alaska for the second time on Western's behalf. She was sent there in order to make a presentation regarding Western's IME services at an Alaska Adjusters Association meeting. Because of the last-minute authorization for this trip, however, Johnson was unprepared to make the presentation. She did attend the Adjusters Association luncheon and left Western promotional materials outside the door of the meeting room. In addition to her attendance at the Adjusters Association meeting, Johnson inspected a potential office site for Western.

After this trip, Johnson submitted a letter of resignation on November 30, 1990, and left for Alaska on her own ticket on December 4, 1990. On December 12, 1990, Western filed for an Alaska business license. Johnson filed articles of incorporation for her own IME business, Medical Evaluations of Alaska, Inc., on December 20, 1990, and filed for an Alas-

ka business license on January 7, 1991. Johnson's first IME's were scheduled for January 12, 1991. Western began conducting IME's in Alaska on January 25, 1991.

Western filed this action in Oregon state court, alleging, *inter alia*, that Johnson had breached the covenant not to compete contained in her employment agreement, breached her fiduciary duty to Western, and misappropriated Western trade secrets. Johnson removed the action to federal court on diversity grounds. 28 U.S.C. § 1332. After a bench trial, the district court rendered a decision dismissing all of Western's claims.

## DISCUSSION

 We review the district court's findings of fact for clear error. *In re San Vicente Medical Partners, Ltd.,* 962 F.2d 1402, 1405 (9th Cir.), *cert. denied,* 506 U.S. 873, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even if we are convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently. *Service Employees Int'l Union v. Fair Political Practices Comm'n,* 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3057, 120 L.Ed.2d 922 (1992). Whether Johnson violated a covenant not to compete, breached her fiduciary duty, or misappropriated trade secrets are mixed questions of fact and law that we review *de novo. See Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991).

### Covenant Not to Compete

 The Employee Confidentiality Agreement signed by Johnson contained the following language:

> For a period of five (5) years after the termination of my employment with WESTERN MEDICAL CONSULTANTS, INC., I will not use any ideas, techniques, processes or know-how from WESTERN MEDICAL CONSULTANTS, INC. directly or indirectly in any business compet-

itive with any business operated by WESTERN MEDICAL CONSULTANTS, INC. within a radius of fifty (50) miles from any office (including part-time offices) of WESTERN MEDICAL CONSULTANTS, INC.

Western contends that Johnson violated this covenant by opening an IME office in Alaska, knowing that Western had intended to open an office there and had taken affirmative steps toward that goal. The district court found that Johnson could not have breached the noncompetition clause of the employment agreement because Western had not established an office in Alaska when Johnson began operating Medical Evaluations of Alaska, Inc. In arriving at this conclusion, the district court interpreted the language of the noncompetition clause narrowly:

> I find it impossible for defendant to have violated the covenant not to compete, as no Western Medical office existed in Anchorage when defendant commenced her operations.

*Western Medical Consultants*, 835 F.Supp. at 557.

■■■ Although we agree with the district court's conclusion that Johnson did not violate the noncompetition clause, we do not take so narrow a view of its language. Employment agreements, as contracts, are construed in the first instance as a matter of law. *De Yarman Allergy & Asthma Clinic, P.C. v. Adler*, 75 Or.App. 141, 706 P.2d 560, 562 n. 2 (1985) (citing *Deerfield Commodities v. Nerco, Inc.*, 72 Or.App. 305, 696 P.2d 1096, 1104, *rev'w denied*, 299 Or. 314, 702 P.2d 1111 (1985)). We must construe the noncompetition clause "so as to make the extent and character of its operation reasonable." *Lavey v. Edwards*, 264 Or. 331, 505 P.2d 342, 344 (1973); *Kelite Prod., Inc. v. Brandt*, 206 Or. 636, 294 P.2d 320, 327 (1956); *see also* 6A Arthur L. Corbin, Corbin on Contracts § 1394 (1962). A covenant not to compete should be enforced to the extent necessary to protect the interest of the employer. *Kelite*, 294 P.2d at 327. "[I]t should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public." *North Pacific Lumber Co. v. Moore*, 275 Or. 359, 551 P.2d 431, 434 (1976) (citing *Eldridge v. Johnston*, 195 Or. 379, 245 P.2d 239, 250 (1952)).

The district court's narrow reading does not sufficiently protect Western's business interests. To hold that the contract permits an employee to start her own business, so long as Western has not begun to do business in the area, would have the effect of creating a race to open the first office—and an unfair one at that, since only the employee would know that the race is on.

On the other hand, if the noncompetition clause is read literally, it prohibits an employee like Johnson from competing with an office of Western even if she establishes her office long before Western even contemplates opening a nearby office. Such an interpretation would impose an unreasonable restraint on competition that would "interfere with the interests of the public." *North Pacific Lumber Co.*, 551 P.2d at 434.

■■■ Taking these considerations into account and seeking a reasonable meaning of the contract, we interpret the noncompetition clause to prevent Johnson from opening her IME business in Alaska if at that time she knew or should have known that Western intended to open an IME business within 50 miles within a reasonably short period of time.[3] Under this interpretation, we uphold the district court's ruling that Johnson did not violate the noncompetition clause.

As the district court found, Johnson became convinced that Western was not interested in developing the Alaska market. *See* 835 F.Supp. at 556. The district court also found "no evidence that Western Medical took any steps to open [an Alaska] office other than sending defendant to Anchorage on two occasions to research a potential

---

**3.** Our interpretation applies to both provisions of Johnson's covenant not to compete: Section I(1), which precludes Johnson from using ideas, techniques, process or know-how in competition with Western, and Section I(2), which prohibits John-son from directly or indirectly encouraging prior employees, suppliers, business associates of customers of Western to reduce or cancel their business with Western.

client base and to do some marketing." *Id.* at 557. · These findings are not clearly erroneous. Johnson was sent to Alaska in October 1990 to research the possibility of opening a Western office in Alaska and to urge potential Alaska customers to send their claims to Oregon. When she returned to Portland, she described, in writing, the logistics and her conclusions about the possibilities of Western opening an office in Alaska. Despite Johnson's optimistic forecasts for a possible expansion into the Alaska market, Western did not follow up on her recommendations.[4] Johnson's supervisor did not recall asking her for more information on Alaska after she submitted her post-trip memorandum nor did he recall having a conversation with Johnson about his own trip to Alaska, even though his trip was for the purpose of setting up the new office. In addition, Johnson's supervisor informed Johnson that Western did not want to open another office in Alaska.[5]

Because sufficient evidence supports the finding of the district court that Johnson did not know or have reason to know, at the time she opened her office, that Western would open an office in Alaska in the reasonably near future, we conclude that she did not breach the noncompetition clause of her employment agreement.

## Fiduciary Duty

 Western contends that Johnson breached her fiduciary duty to Western because she did not disclose her intent to open an IME business in Alaska and because she made improper use of Western's resources and confidential information. Johnson did not breach a fiduciary duty owed to Western. First, Johnson had no affirmative obligation to disclose her plans to leave Western, and Western cites no legal rule obligating Johnson to reveal her plans.

Second, she did not improperly use Western's resources and confidential information. Section 393 of the *Restatement (Second) of Agency*[6] instructs that an employee may make arrangements to compete with her employer before termination of employment, "except that [s]he cannot properly use confidential information peculiar to h[er] employer's business and acquired therein." *Restatement (Second) of Agency* § 393, comment e. During her tenure at Western, Johnson fulfilled her work obligations and marketed only Western services. She did not improperly use confidential Western information during or after her employment

---

4. As Johnson testified,

> It seemed to me that no affirmative steps were being taken to open that [the Anchorage] market. I had seen through my experience working with Dan [her supervisor] how he had behaved with other potential markets. He was to my knowledge not following any of his steps that he had followed before.
>
> I wasn't getting—I was very enthusiastic about the possibility of the Alaska site. I wasn't getting a whole lot of positive feedback. We didn't get a business—the business license sat and sat and sat on Dan's desk. I volunteered to fill it out even, and he said, "No, Shannon, I know things about setting up an office that you don't know, don't worry about it. I'll take care of this type of stuff, you concentrate on, you know, your customers."

In addition, Western's appointment supervisor confirms Johnson's frustration with her supervisors:

> She was upset with the way Dan [her supervisor] was handling the Anchorage marketing. She said that the way he was handling it and the market up there we were probably going to lose the Anchorage market and that he was going about it all wrong.

Later, the appointment supervisor testified,

> A. At the time the feeling I felt from her, not knowing what was going on with her, at the time—the feeling I felt from her was that she thought it was a great market and we should really be pursuing it maybe in a different way than we were.
> Q. And she was concerned that Dan was going to lose that opportunity for Western, correct?
> A. Yes. That's what it sounded like.

5. As Johnson testified, when she raised the subject of opening an Alaska office, one of her supervisors expressed reservations:

> [W]hen I broached the topic of this newsletter that MCN [a competing IME company] had been to the Anchorage market, the Alaska market.[sic] Virginia [Johnson's supervisor], to the best of my memory, just kind of laughed and said, "Oh, they can have Alaska, we'll keep Hawaii and California."

6. Under Oregon law, section 393 of the *Restatement (Second) of Agency* applies to actions involving claims of unfair competition by a principal against former employees. *See, e.g., Western Alliance Corp. v. Western Reliance Corp.*, 57 Or.App. 263, 643 P.2d 1382, 1389 (1982).

with Western. The district court found that Johnson did not breach her duty of loyalty because

> [t]he evidence show[ed] that [Johnson] used reasonable efforts to market Western Medical's services during both of her trips to Alaska and that [Johnson] provided or attempted to provide Western Medical with the information relevant to her assignment to research the Alaska market.

835 F.Supp. at 559.

The district court did not clearly err in finding that Johnson fulfilled her obligations as Western's marketing representative assigned to research the Alaska market. Before her first trip to Alaska in October 1990, Johnson prepared a memorandum listing her potential contacts. She compiled the list by looking up potential customers in the telephone book and calling those potential contacts. She received two other names from her employer, who had obtained those names from an adjusters' guide. When she returned from Alaska, Johnson prepared a detailed written memorandum of her findings, which included price estimates, administrative set-up costs, and other logistical concerns. When she was sent to Alaska again in November 1990, she distributed Western brochures and marketing information at an Alaska Adjusters Association meeting and visited a potential office site for Western. Even after she resigned, Johnson offered to her successor information about the results of her marketing efforts. The record shows no evidence that Johnson, while employed by Western, conducted any personal business in Alaska. Thus, the trial court's findings regarding Johnson's marketing efforts while employed by Western are not clearly erroneous. The findings show that she upheld her duty of loyalty as Western's employee.

### Trade Secrets

█ Western maintains that its marketing plans and specialized customer information are trade secrets under Oregon law.

Oregon Revised Statute § 646.461(4) defines a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use." Western argues that, under the statute's definition of trade secrets, its customer information was a trade secret and could not be used by Johnson in setting up her Alaska operations.

The district court found that the information Johnson used to start her business "arose from general know-how, skill and experience gained while employed" at Western. *Western Medical Consultants*, 835 F.Supp. at 557. While at Western, Johnson

> learned what groups consumed IME services, how to market these services to those consumers, what services needed to be provided and how to provide those services in a profitable manner.

*Id.* The district court's findings are not clearly erroneous.

The information used by Johnson in opening her own IME business was not a Western trade secret. Western's customer lists were compiled from various generally known and accessible sources, including the yellow pages, industry publications, or through inquiry to an appropriate state insurance agency.[7] Johnson phoned these potential contacts to gather further information regarding the customers' IME needs. Western's marketing information was readily obtainable to anyone interested in starting an IME company in Alaska, and Johnson gained knowledge of such information during the regular course of her employment. *Cf. Alexander & Alexander Benefits Services, Inc. v. Benefit Brokers & Consultants*, 756 F.Supp. 1408, 1414 (D.Or.1991) (entire customer files and client activity reports considered confidential information); *American Republic Ins. Co. v. Union Fidelity Life Ins. Co.*, 295 F.Supp. 553, 555 (D.Or.1968), *aff'd,* 470 F.2d 820 (9th Cir. 1972) (customer lists developed almost en-

---

**7.** The finding that potential customers for IME's in Alaska were commonly known and readily ascertainable is further supported by the testimony of the head of expansion for another IME firm. The witness stated that the principal sources of potential customers include the phone book, the state insurance division, bar association directories, and generally-attended trade shows.

tirely through efforts of employer and disclosed to supervisory employees only in the course of their employment considered confidential). Johnson did not misappropriate any trade secret because the information she used was "generally known to the public." Or.Rev.Stat. § 646.461(4).

## Conclusion

Johnson did not violate the covenant not to compete, breach her fiduciary duty, or misappropriate trade secrets. The district court's judgment is

**AFFIRMED.**