**Michael W. TUCKER, Plaintiff,**

v.

**OREGON AERO, INC., an Oregon corporation, MJD Innovations, LLC, Michael R. Dennis, and Jude Dennis, individuals, Defendants.**

**No. CV–05–930–HU.**

United States District Court, D. Oregon.

Feb. 1, 2007.

---

Christopher H. Kent, Leslie S. Johnson, Kent & Johnson, LLP, Portland, OR, for Plaintiff.

Christopher James, The James Law Group, Portland, OR, for Defendants.

## OPINION & ORDER

HUBEL, United States Magistrate Judge.

Plaintiff Michael W. Tucker brings this action against defendants Oregon Aero, Inc., MJD Innovations, LLC, Michael Den-

nis, 1–OPINION & ORDER and Jude Dennis. Plaintiff and defendants move for summary judgment. All parties have also consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

For the reasons explained below, I deny defendants' motion and I grant in part and deny in part plaintiff's motion.

## BACKGROUND

Plaintiff is a mechanical engineer with work experience in human factors engineering. Oregon Aero (OA) is an Oregon corporation which designs and manufactures products for the airline and aviation industries. MJD Innovations, LLC (MJD), is an Oregon limited liability company organized by Michael and Jude Dennis. The Dennises are husband and wife and are the sole shareholders, officers, and directors of OA, and the sole members of MJD.

Plaintiff met the Dennises in the latter half of 1996 and began a working relationship with OA in 1997, initially pursuant to an oral independent contractor agreement. Plaintiff's first assignment was to work on seat cushion cores. He later moved into the development of military products and acted as a military liaison.

The parties appear to have exchanged drafts of a written independent contractor agreement (ICA) ("written ICA") in 1997 and into 1998. Multiple drafts were exchanged. Neither OA nor plaintiff ever signed the written ICA. Nonetheless, plaintiff continued as an independent contractor for OA for many years.

The patents at issue in this case are sold under particular product names. One, a "BLU Kit" is a helmet pad suspension system consisting of several foam pads and supplied for new helmets. Another, a "BLSS Kit," is a modification to an existing helmet.

Plaintiff asserts that he developed, or assisted in the development of, the "BLU Kit" and the "BLSS Kit." The products were patented, or have patent applications pending. Plaintiff was listed as a co-owner of the patents.

The parties agree that in October 2003, Mike Dennis told plaintiff that MJD needed to own the patents. Plaintiff asserts he was the prior owner; defendants assert OA was the prior owner. Between October 2003 and May 2004, plaintiff signed five assignments transferring rights in the identified patents to MJD.

While it is not necessary to recite the details of plaintiff's compensation throughout his relationship with OA here, it is relevant to note that plaintiff asserts that Mike Dennis orally represented that after assignment of the patents, plaintiff's previous percentage of sales payments that he had been receiving, would be replaced by a formal agreement to pay royalties on the sales of the patented products.

Plaintiff terminated his consulting relationship with OA in February 2005. Plaintiff alleges that he received nothing in exchange for the patent assignments and that defendant breached its oral contract regarding plaintiff's compensation, beginning in January 2005.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agricultural Research and Tech. Group,* 916 F.2d 528, 534 (9th Cir.1990); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

## DISCUSSION

Plaintiff's claims generally concern plaintiff's assignment of certain patents to defendants. In his Second Amended Complaint, plaintiff brings claims of breach of contract, misrepresentation, rescission, and conversion. OA asserts counterclaims of breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, fraudulent inducement, unjust enrichment, and rescission. All defendants also bring a declaratory judgment claim regarding the inventor of the patents, and a claim under 35 U.S.C. § 256, also regarding the inventor of the patents.

Plaintiff moves for summary judgment, or partial summary judgment, on the following claims and counterclaims: plaintiff's claims for rescission and conversion, all of the counterclaims seeking removal of plaintiff as an inventor, defendants' 35 U.S.C. § 285 counterclaim, and the counterclaims of breach of fiduciary duty, fraudulent inducement, and unjust enrichment.

Defendants move for summary judgment on the following counterclaims: declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and on a statute of frauds affirmative defense.

## I. Breach of Contract Counterclaim—Defendants' Motion

The breach of contract counterclaim alleges that plaintiff and OA had an agreement, based on the terms of the proposed written ICA, and pursuant to that agreement, plaintiff owed certain express duties to OA, including, but not limited to, the duty to maintain confidentiality of certain information and the duty not to compete. Defts' Ans. at ¶¶ 49, 50. OA contends that plaintiff has breached the agreement in various ways, including breaching the confidentiality and non-compete provisions. *Id.* at ¶ 79.

As noted above, it is undisputed that plaintiff and OA had an oral independent contractor agreement which preceded their exchange of multiple draft written

agreements. Despite extensive briefing by both parties, the precise terms of the oral agreement, other than the compensation provided under the oral argument, are not clearly established in the summary judgement record.

Plaintiff asserts that from the outset, he was paid on an hourly basis for time spent for OA's benefit and was entitled to reimbursement for some expenses. Ptlf's CSF at ¶ 16. Plaintiff also asserts that he was further entitled to payment of a percentage-of-sales or commission for sales of products he helped develop. *Id.* Defendants admit that plaintiff was entitled to a percentage of sales or commission for sales of certain products, but defendants dispute any characterization by plaintiff that such percentage or commission was limited to products plaintiff helped develop. Defts' Resp. to Pltf's CSF at ¶ 16.

In deposition, Mike Dennis explained that plaintiff received a commission on a "group of products available to him to represent as a sales agent." M. Dennis Depo. at p. 109. These were products plaintiff had not developed, but were available for him to sell. *Id.* at p. 110. Additionally, he received "[t]en percent of the value of a [BLU kit]," "the primary product of development." *Id.* at p. 111. That was later changed to four percent. *Id.* at pp. 111–12. The testimony does not indicate when the change from ten percent to four percent occurred. He also received

2.4 percent of the gross sales of the BLSS kit due to his contribution to the development of the pads included in it. *Id.*

Other than this compensation arrangement, however, nothing in the record addresses any other aspect of the oral agreement.

At least one draft of the written ICA provides for plaintiff to receive a monthly payment of $1,666.67 for his consulting services, and an additional commission for sales of certain products described in Appendices A and B to the draft written Exh. B to May 1, 2006 Affid. of Philip Griffin Depo. Exh. Exh. B to May 12, 2006 Affid. of Philip Griffin Depo. Exh. The Appendices are referred as the "Products Under Contract" and "Product Commission Rate Schedule." [1]

Exhibit 40 recites that OA desires to retain plaintiff's services and plaintiff desires to provide specialized consulting services to OA in the areas of product design and development and sales and marketing of new and existing products of OA. Exh. B to May 1, 2006 Griffin Affid. at p. 1. The draft ICA further recites that the parties were entering

> this Agreement to set forth the terms and conditions of the Independent Consultant Agreement, to address certain matters related to Tucker's contract and contacts with Oregon Aero, and to restrict certain activities by Tucker that

1. Defendants submitted the exhibit both in support of their motion for summary judgment and in response to plaintiff's motion but neither exhibit contains the referenced appendices. Exhibit 1 to the May 26, 2006 Affidavit of Robert Castro contains a couple of different pages entitled "Appendix A" and "Appendix B" which appear to be the pages referred to in Deposition Exhibit 40. Exh. 1 to May 26, 2006 Castro Affid. at pp. OA 02176, OA 02177. Appendix A lists various products under contract. *Id.* at p. OA 02176. Appendix B lists the commission schedule and provides that (1) sales of existing products not listed in Appendix A in which plaintiff is responsible for the sale and submits a written sales order, earn a four percent commission; (2) sales of products listed in Appendix A earn a four-percent commission unless plaintiff is responsible for the sale and submits a written sales order in which case the commission is six percent; and (3) in the event of externally funded research and development, sales and or development of products where plaintiff is partially responsible, plaintiff will be compensated at an agreed upon fee, negotiated with OA's officers. *Id.* at OA 02177.

the parties acknowledge and agree would constitute unreasonable and unfair competition and detract from Tucker's loyalty and commitment to Oregon Aero.

*Id.*

Exhibit 40 also contains a confidentiality provision and a covenant not to compete. *Id.* at pp. 4–5. A separate provision established that the agreement was to constitute the "entire agreement of the parties concerning its subject matter and supersedes all other oral or written understandings, discussions, and agreements[.]" *Id.* at p. 10. It also provided that it could be modified only in writing signed by both parties. *Id.*

In deposition, plaintiff admitted that Deposition Exhibit 40 incorporated the changes plaintiff had made to Deposition Exhibit 41, but he also testified that he could not recall the particular order of the draft agreements and thus, could not recall if there was another after Deposition Exhibit 40. Pltf's Depo. at pp. 135–36, 138, 140.[2] Plaintiff testified that by preparing "this document," which presumably refers to Deposition Exhibit 40, both parties were seeking to confirm "this consulting relationship." *Id.* at p. 153. However, plaintiff further stated that the fact he did not sign Exhibit 40 provides a reason to believe that it did not express his agreement with OA at that time in regard to his consulting services. *Id.* at p. 140.

In the summary judgment motion, OA contends that plaintiff is bound by the non-competition and confidentiality provisions of the written ICA, under any of several different legal theories. First, OA argues that the written ICA governs the parties' relationship based on a contract formation theory of mutual assent.

 "Whether a contract existed is a question of law." *Ken Hood Constr. Co. v. Pacific Coast Constr., Inc.,* 201 Or.App. 568, 577, 120 P.3d 6, 11 (2005), *modified,* 203 Or.App. 768, 126 P.3d 1254, *rev. denied,* 341 Or. 366, 143 P.3d 239 (2006). As explained in Ken *Hood*:

> Oregon subscribes to the objective theory of contracts In determining whether a contract exists and what its terms are, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts. .... Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.... The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.

*Id.* at 578, 120 P.3d at 11 (internal quotations and citations omitted). Additionally, "[a] manifestation of acceptance to the offeror or his agent forms the contract regardless of the intent of the acceptor." *Id.* (internal quotation omitted).

While the issue of contract formation is a question of law, the more accurate framing of the legal issue is "[w]hether particular historical facts constitute the formation of a contract[.]" *Newton/Boldt v. Newton,* 192 Or.App. 386, 392, 86 P.3d 49, 52, *rev. denied,* 337 Or. 84, 93 P.3d 72 (2004), *cert.*

---

**2.** At page 140 of the deposition, plaintiff responds affirmatively to the question of whether "Exhibit 41 contains your edits to Exhibit 40?" Pltf's Depo. at p. 140. The preceding pages of the deposition make clear, however, that the question inverted the deposition exhibit numbers so that the question should have been to ask whether Exhibit 40 contained the edits to Exhibit 41. Thus, it is clear that plaintiff's testimony is that while Exhibit 40 incorporated the handwritten edits plaintiff made to Exhibit 41, he nonetheless cannot confirm how many versions of the agreement were exchanged, in what order, or whether Exhibit 40 was the final version.

*denied,* 543 U.S. 1173, 125 S.Ct. 1365, 161 L.Ed.2d 153 (2005). Thus, the court must find the historical facts before resolving the legal issue of whether those facts constitute the formation of a contract. *See Batzer Constr., Inc. v. Boyer,* 204 Or.App. 309, 317–18, 129 P.3d 773, 778–79 (in context of analyzing ambiguous contract term, where parties present evidence of the circumstances underlying the formation of the contract as part of the analysis related to ambiguity, "the court must first find the historical facts before resolving the legal question whether the term is ambiguous."), *rev. denied,* 341 Or. 366, 143 P.3d 239 (2006); *Wescold, Inc. v. Logan Int'l, Ltd.,* 120 Or.App. 512, 519–20, 852 P.2d 960, 964–65 (1993) (in context of analyzing whether the terms of a contract are integrated, court must first resolve preliminary issues of historical fact, or "what happened"; then the court determines the legal effects of those facts).

As echoed in *Ken Hood,* Restatement (Second) of Contracts § 18 provides that the manifestation of mutual assent to an exchange requires each party to either make a promise or begin or render a performance. Section 19 of the Restatement then addresses conduct as a manifestation of an assent:

(1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.

(2) The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.

(3) The conduct of a party may manifest assent even though he does not in fact assent. In such cases a resulting contract may be voidable because of fraud, duress, mistake, or other invalidating cause.

Restatement (Second) of Contracts § 19.

OA relies primarily on Restatement (Second) of Contracts § 20 which addresses the effect of misunderstanding. It provides:

(1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and

(a) neither party knows or has reason to know the meaning attached by the other; or

(b) each party knows or each party has reason to know the meaning attached by the other.

(2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if

(a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or

(b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party.

Restatement (Second) of Contracts § 20.

Comment a explains that subsection (1) of Section 20 "states the implications of the rule of § 19(2) as to meaning of 'manifestation of mutual assent' in cases of mistake in the expression of assent." Restatement (Second) of Contracts, Section 20, comment a. The comments further explain that the

basic principle governing material misunderstanding is stated in Subsection (1): no contract is formed if neither party is at fault or if both parties are equally at fault. Subsection (2) deals with cases where both parties are not

equally at fault. If one party knows the other's meaning and manifests assent intending to insist on a different meaning, he may be guilty of misrepresentation. Whether or not there is such misrepresentation as would give the other party a power of avoidance, there is a contract under Subsection (2)(a), and the mere negligence of the other party is immaterial.

Restatement (Second) of Contracts § 20, comment d.

Relying on Section 20(2), OA contends that the undisputed facts show that the parties intended to be bound by the written ICA, that plaintiff had a particular meaning of the written ICA, that is, not to be bound by the non-competition and confidentiality provisions, and OA had a different meaning, that is, that plaintiff be bound by those provisions, and because OA did not did not know of plaintiff's meaning, but plaintiff knew of OA's meaning, the contract should be formed according to OA's meaning. Additionally, OA argues, the undisputed facts show that plaintiff has breached these provisions and thus, it is entitled to summary judgment on its breach of contract counterclaim.

■ The summary judgment record before me does not find support defendant's argument. As noted above, there is no dispute that plaintiff was working for OA since early 1997 under an oral independent contractor agreement. There is also no dispute that the parties exchanged drafts of the written ICA in late 1997 and early 1998 and that neither plaintiff, nor anyone from OA signed the written ICA. Plaintiff contends that the parties simply proceeded along the terms of the oral agreement and that his failure to sign the written ICA is

objective evidence of his intent not to be bound by it. Defendants contend that regardless of plaintiff's, and defendants', failure to sign the written ICA, its provisions still control the parties' relationship.

The first problem I have is that the historical facts are not fully developed in the summary judgment record. As noted above, although the record discloses plaintiff's compensation under the oral agreement, there is no evidence[3] of any non-competition or confidentiality provision in the oral contract. Thus, I cannot assess whether the drafts of the written ICA were simply a written memorialization of the preexisting oral contract or were a proposed contract modification. In either of those cases, Section 20 would not apply because it addresses contract formation rather than written memorialization of a preexisting oral contract or modification of a preexisting contract.

Second, even if the historical facts supported analyzing the issue as one of contract formation, I reject defendants' characterization of the cited deposition testimony. Defendants contend that plaintiff admitted in deposition that the final version of the written ICA reflected the parties' intentions, and that plaintiff testified that although the written ICA contains explicit provisions regarding confidentiality and non-competition, he did not believe he owed any duties to OA regarding the protection of confidential information or competitive interests. Defendants also assert that at no time did plaintiff inform OA that he did not agree with the written ICA's non-competition and confidentiality provisions.

---

**3.** I have reviewed the entire summary judgment record carefully. Nonetheless, I note that Local Rule 56(e) provides that "Except as otherwise required by law, when resolving a motion for summary judgment, the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."

Although plaintiff admitted in his deposition that Deposition Exhibit 40 incorporated his handwritten edits to Deposition Exhibit 41[4], his testimony does not support defendants' assertion that Deposition Exhibit 41 was the last draft plaintiff edited or that the handwritten edits were to a final draft. Pltf's Depo. at pp. 138, 140 (while admitting that Deposition Exhibit 40 incorporated the changes plaintiff had made to Deposition Exhibit 41, plaintiff also testified that he could not recall the particular order of the draft agreements and thus, could not recall if there was one after Deposition Exhibit 40). The deposition testimony also does not support defendants' assertion that plaintiff intended to be bound by Deposition Exhibit 40. *Id.* at pp. 140, 153 (although plaintiff testified that by preparing "this document," (presumably referring to Deposition Exhibit 40), both parties were seeking to confirm "this consulting relationship[,]" he also stated that the fact he did not sign Deposition Exhibit 40 provides a reason to believe that it did not express his agreement with OA at that time in regard to his consulting services). *Id.* at p. 140.

Next, defendants rely on the following testimony to support their assertion that plaintiff had no intent to be bound by the written ICA's confidentiality and non-compete provisions "from day one":

Q: Did you believe that during the time that you worked for Oregon Aero you had the right to compete with them in any of their areas of products or inventions?

[objection by counsel but witness instructed he could answer]

A: Yes

Q: And could that competition take the form of your contacting a competitor in regards—or of Oregon Aero and while you were working for Oregon Aero offer support or product development services to them, to the competitor?

[same objection and instruction] A: I could have.

Q: Did you ever contact a competitor in regards—did you ever contact a competitor of Oregon Aero and work in any fashion to support them?

A: No.

Q: So, what you're talking about is a theoretical opportunity or right that you felt you had?

A: Yes.

Q: And did the right that you're describing, or the privilege that you're describing, did it commence with your first employment with Oregon Aero or did it arise subsequent to that?

[same objection and instruction]

A: One, I was never an employee of Oregon Aero. And since there was never an agreement signed, then from day one I would have had that theoretical right.

Pltf's Depo. at pp. 242–44.

I do not read the testimony as an admission by plaintiff that he lacked the present intent to comply with the confidentiality and non-compete provisions of the written ICA at the time the written ICA was being negotiated. Rather, the testimony reveals that plaintiff admitted that in retrospect, because the written ICA was not signed, he *would have* had the right to compete from day one. Thus, the record does not support OA's argument that at the time the written ICA drafts were exchanged, plaintiff then possessed a subjective intent not to be bound by the confidentiality and non-compete provisions. Accordingly, OA cannot sustain a contract formation argument based on a Section 20(2) theory.

Finally, even if the non-competition and confidentiality provisions were operative

---

4. See footnote 2.

based on OA's Section 20(2) theory, OA would still not prevail on the summary judgment motion as to its breach of contract claim. According to OA's own interpretation of the cited testimony, plaintiff never took any action consistent with his alleged belief that he was not bound by the non-competition provision. There simply is no breach of the non-compete provision given the lack of any action by plaintiff. *See Western Medical Consultants, Inc. v. Johnson,* 835 F.Supp. 554, 559 (D.Or.1993) (Judge Redden held that an employee who was subject to an express non-compete agreement did not breach her fiduciary duty by failing to tell her employer that she *might* compete with the employer in its Alaska market), *aff'd,* 80 F.3d 1331 (9th Cir.1996).

The next theory upon which defendants argue that the non-competition and confidentiality provisions are operative, despite neither party signing the written ICA, is one they call "acceptance of benefits." Defendants contend that a party can accept a written contract offer by act or conduct as well as by writing. Defendants suggest that where the party's assent is indicated by an act or conduct instead of by writing, the party is still bound by the terms of the written contract.

While defendants may accurately state the law, *see Western Bank v. Morrill,* 245 Or. 47, 58, 420 P.2d 119, 124 (1966) (in absence of statute requiring agreement to be in writing signed by the party to be charged, parties may become bound by the terms of a written contract, though they do not sign it, where their assent is otherwise indicated), I still have concerns about the undeveloped historical facts, the undisputed evidence of the preexisting oral contract, and the cited deposition testimony. Even though the question of contract formation is one of law, on this record, I cannot ascertain if plaintiff's conduct was simply a continuation of his performance under the oral contract and nothing more, or is properly characterized as an acceptance of the proposed written contract. Thus, I reject defendants' summary judgment argument that a contract was formed based on an "acceptance of benefits" theory.

Finally, defendants contend that even if there is no basis for finding an express contract, I should find an implied-in-fact contract by inferring one from the parties' conduct, or alternatively, I should at least imply at least the confidentiality and non-competition terms in the parties' relationship.

■ Generally, a contract will be implied in fact when there is no express mutual assent and the court determines the existence of mutual assent by examining the parties' conduct. *See Owen v. Bradley,* 231 Or. 94, 103, 371 P.2d 966, 970 (1962) (implied contract arises only where the natural and just interpretation of the parties' acts warrants such a conclusion); *see also Staley v. Taylor,* 165 Or.App. 256, 262, 994 P.2d 1220, 1224 (2000) (implied in fact contract is not different in legal effect from an express contract, but difference is in how parties manifest their agreement; in express contracts, the parties use written or spoken words and in implied in fact contracts, the parties' agreement is inferred, in whole or in part, from their conduct).

The same problems as recited above plague this theory as well. Based on the current record, plaintiff's conduct my be nothing more than performance consistent with the preexisting oral contract. It does not appear that the written ICA was proposed at the outset. Thus, there is no support in the current record for an implied-in-fact contract based on plaintiff's performance being objectively consistent with writings generated contemporaneously with the initiation of plaintiff's relation-

ship with OA. Instead, the record shows plaintiff had performed under an oral contract for months before the parties drafted and exchanged written proposals.

As to the confidentiality and non-compete provisions, defendants argue that I should imply these contract terms based on plaintiff's admission that during the course of his work for OA, he was aware of and worked to protect OA's confidential information and its competitive interests. Defendants argue that this establishes a course of conduct which supports implied contract terms regarding protection of confidential information and competitive interests.

Here, again, the facts in this summary judgment record cannot support a conclusion that as a matter of law, these terms should be implied. Moreover, there is no evidence that plaintiff actually breached any such term by any conduct and thus, summary judgment on the contract claim, at least as to these provisions, is denied for that reason alone. To the extent defendants contend that plaintiff's conduct in bringing this lawsuit is a breach of a contract provision, I reject that argument. I find no support for defendants' theory that if a party to a contract has a contrary view of whether there is a contract at all, or in the interpretation of a contract, it cannot litigate those issues without being in breach of the contract.

I deny defendants' motion for summary judgment as to the breach of contract claim.

## II. Declaratory Judgment Claim—Defendants' Motion

In this counterclaim, defendants seek a declaration that plaintiff is not an inventor on the two patents or five patent applications, and has no ownership interest in those patents or patent applications. Defendants also seek a declaration that OA employee Tony Erickson should be named as an inventor on one of the patents and the five patent applications.

In the summary judgment motion, defendants argue for summary judgment on the declaratory judgment claim based on the same argument that OA asserted in support of its breach of contract claim: that the written ICA defines "confidential information" to include patents and that plaintiff is bound by the confidentiality provision of the written ICA under any of several legal theories. For the reasons explained above in the section discussing the breach of contract claim, I deny defendants' motion on the declaratory judgment claim.

## III. Counterclaims Implicating Plaintiff's Inventorship—Plaintiff's Motion

Plaintiff moves for summary judgment on (1) defendant's 35 U.S.C. § 256 counterclaim; (2) the declaratory judgment counterclaim; (3) the portion of the breach of contractual duty of good faith counterclaim contending that plaintiff misled and concealed from OA that he did not contribute to the patent conceptions and continued to accept compensation from OA when he was not a co-inventor; (4) the portion of the breach of fiduciary duty counterclaim alleging that he breached a fiduciary duty by not disclosing his lack of contribution to the conception of the patents, by continuing to accept compensation under the false pretense that he was an inventor, and by misleading others regarding his role in developing the patents; and (5) the portion of the unjust enrichment counterclaim alleging that plaintiff did not disclose his lack of contribution to the conception of the patents and continued to accept compensation beyond that to which he was entitled.

### A. 35 U.S.C. § 256

In this claim, defendants contend that although plaintiff is listed as either an

inventor or co-inventor on U.S. Patent No. 6, 467, 099 ("the '099 patent"), U.S. Patent No. 6,812,375 ("the '375 patent"), U.S. Patent Application No. 20020152542 ("the '542 patent application"), and U.S. Patent Application No. 20050255307 ("the '307 application"), plaintiff did not contribute to the conception of any claims of these patents and patent applications and instead, had only limited or no involvement with the patents or their claims. Answer at ¶¶ 59, 60, 62. Defendants contend that plaintiff misled OA as to his involvement in the conception of the patents and patent applications. *Id.* at ¶ 63. Defendants further contend that Erickson contributed to the conception of the '099 patent, and two patent applications. *Id.* at ¶ 64.

Defendants seek an order directing the United States Patent & Trademark Office to remove plaintiff as a named inventor of the '099 patent, the '375 patent, the '542 patent application, the '307 patent application, and three other patent applications. *Id.* at ¶¶ 67, 68. Defendants further seek an order directing the United States Patent & Trademark Office to add Erickson as a named inventor on the '099 patent, and all of the noted patent applications. *Id.*

Section 256 provides:

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called

in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

The law presumes that because plaintiff is a named inventor, he was indeed an inventor. *Caterpillar, Inc. v. Sturman Indus., Inc.,* 387 F.3d 1358, 1377 (Fed.Cir.2004) ("Patent issuance creates a presumption that the named inventors are the true and only inventors."), *cert. denied,* 545 U.S. 1114, 125 S.Ct. 2906, 162 L.Ed.2d 295 (2005). The law requires defendants to provide clear and convincing evidence to overcome this presumption. *Id.* The testimony of the person claiming to have been omitted from the patent as an inventor is not, by itself, clear and convincing evidence. *Id.*

Here, defendants rely on testimony by Erickson, the alleged omitted inventor, and further rely on an affidavit by another OA employee, Dan Baxter. Erickson states that he was involved in all aspects of the development of the helmet pads; he provides details of that development process in his deposition testimony. Erickson Depo. at pp. 6–12, 26–27. Erickson testified that plaintiff made "contributions to the overall products of [OA] that [plaintiff] worked on[,]" with "contributions" meaning communicating information, customer needs, what the market wanted, or the performance of products, or prototypes of products. *Id.* at pp. 33–34. He also contributed by communicating government specifications and identifying what the product needed to do. *Id.* Later, Erickson testified that plaintiff had little to do with the design of the BLU and BLSS kits. *Id.* at p. 47.

Baxter, initially involved with OA's production of aircraft seats, frequently worked with Erickson on various projects related to product development and pro-

duction. Baxter Affid. at ¶ 2. He observed plaintiff in plaintiff's capacity as military liaison, communicating with the military regarding equipment problems and then relaying that information to Baxter and Erickson. *Id.* at ¶ 4.

Baxter remembers plaintiff bringing three green pads plaintiff had received from the military, to Erickson and Baxter, to determine if OA could produce the same type of pads. *Id.* at ¶ 5. Baxter and Erickson focused on improving the design. *Id.* at ¶ 7. Baxter describes how Erickson formulated and pursued ideas regarding the development of the BLU and BLSS kits. *Id.* at ¶ 12. He notes that plaintiff observed and assisted during testing of such ideas. *Id.* He concludes that while plaintiff was present at OA during the development of the pad system that ultimately became the BLU/BLSS kits, his role was limited to providing input from the military regarding its needs, assisting with the testing, and working with the military with field testing of the product. *Id.* at ¶ 13.

In contrast, Tucker describes his contributions to the patents covering the designs of the BLU and BLSS kits as including designing a five-pad system for the BLU kit, and having responsibility for the design of the system when the military requested that the number of pads increase from five to seven. Tucker Declr. at ¶ 6. Plaintiff further testifies regarding his contributions to the other patent at issue in the case, and states that it resulted from his idea for an improved blunt impact protection system for fire-fighting helmets. *Id.* at ¶ 8. He notes that the design was completely his idea. *Id.*

■ Clearly, on this record, there is a disputed issue of fact regarding the contribution plaintiff made to the patents. Defendants assert that plaintiff's participation in the development of the patents was minimal, while plaintiff attests to pro-

viding more substantial ideas of conception and design.

The precise question here, however, is whether defendants have created an issue of fact by showing, with clear and convincing evidence other than that of the omitted inventor, that plaintiff was not an inventor or co-inventor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that in ruling on a summary judgment motion, the district court takes this heightened evidentiary standard into consideration).

■ "To be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality[.]" *Cook Biotech Inc. v. Acell, Inc.,* 460 F.3d 1365, 1373 (Fed.Cir.2006) (internal quotation omitted). While Erickson's testimony describing plaintiff's allegedly minimal participation in the product development process cannot, as a matter of law, constitute clear and convincing evidence to refute the presumption of plaintiff's inventor status, his testimony is corroborated by Baxter's testimony which, if credited as true, would tend to show that plaintiff's contributions, described by Baxter as being limited to providing information about the product to and from the military and assisting in testing, do not meet the level of contribution required to be considered an inventor.

Baxter's affidavit is sufficient to defeat the motion, even considering the clear and convincing burden of proof defendants bear on this issue, because if his corroborating testimony is believed, plaintiff's work on the patented products was not a contribution to the product's conception. *E.g., Trovan, Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1302–03 (Fed.Cir.2002) (corroborating evidence "preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention," but may also consist of

circumstantial evidence about the inventive process or reliable testimony from someone other than the omitted inventor); *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.,* 906 F.Supp. 967, 971–72 (D.N.J.1995) (sworn statement by omitted inventor insufficient by itself to defeat patent holder's motion for summary judgment on section 256 claim brought by omitted inventor, but motion denied because statement in a pretrial document by patent licensee that omitted inventor was an inventor provided sufficient corroboration under clear and convincing standard); *Celestron Pac. v. Criterion Mfg. Co., Inc.,* 552 F.Supp. 612, 615–16 (D.Conn.1982) (motion for summary judgment on claim of misjoinder of inventors denied when deposition testimony regarding roles played by individuals, conflicted).

I deny plaintiff's motion on this claim.

### B. Other Counterclaims Implicating Inventorship

For the reasons explained in connection with the motion on the section 256 claim, I deny plaintiff's motion addressed to the declaratory judgment claim and the portions of the three other claims that contend that plaintiff is not an inventor or a co-inventor of the patents or patent applications at issue in the case. The record reveals conflicting evidence regarding plaintiff's role in the development of the products and thus, summary judgment is inappropriate.

### IV. 35 U.S.C. § 285—Plaintiff's Motion

Although not a separately delineated counterclaim, defendants seek the recovery of attorney's fees under 35 U.S.C. § 285 in connection with their section 256 claim. Section 285 states that the court may award reasonable attorney's fees to the prevailing party in a patent case, in "exceptional cases." 35 U.S.C. § 285.

Plaintiff moves for summary judgment on this claim, arguing an "exceptional case" is found only upon clear and convincing evidence of bad faith by the party claiming patent ownership, and such a showing is impossible for a claim under section 256 because section 256 is confined to when omission or other inventorship mistake is due to inadvertent error.

■ Plaintiff correctly states that a party seeking attorney's fees under section 285 must prove the existence of an "exceptional case" by clear and convincing evidence of bad faith. *See, e.g., Hoffmann–La Roche Inc. v. Invamed Inc.,* 213 F.3d 1359, 1365 (Fed.Cir.2000) (prevailing party must prove the existence of an exceptional case by clear and convincing evidence, showing willful infringement; inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; or a frivolous suit).

However, plaintiff misstates the law regarding section 256. That statute allows a misjoined inventor to be deleted regardless of whether the error of misjoinder occurred by deception or mistake. *University of Col. Foundation, Inc. v. American Cyanamid Co.,* 196 F.3d 1366, 1374 (Fed.Cir.1999). In contrast, the statute allows the error of nonjoinder, where the inventor is completely omitted and wants to be added, to be corrected only in the absence of deceptive intent. *Id.* As explained by the Federal Circuit, "the statute allows correction in all misjoinder cases featuring an error and in those nonjoinder cases where the unnamed inventor is free of deceptive intent." *Id.*

■ Defendants' counterclaim concerns both a misjoinder argument (plaintiff should not have been listed as in inventor), and a nonjoinder argument (Erickson should have been a named inventor). Here, because the statute allows a misjoinder error to be corrected even if the error

occurred by deception, I cannot conclude, as a matter of law, that defendants cannot seek attorney's fees pursuant to section 285 should they prevail on that aspect of the counterclaim.

■ However, I reach the opposite result as to the nonjoinder argument. The nonjoinder error may be corrected only if the nonjoinder mistake occurred with no deception by the omitted inventor, in this case Erickson. Plaintiff argues that because defendants can sustain this part of the claim only by showing an innocent mistake, it is, by definition, incompatible with a determination of bad faith.

The proper inquiry on the fee issue, however, is not the bad faith of the omitted inventor, but rather, the bad faith on the part of the party who loses the claim, meaning plaintiff in the case of defendants' claim for attorney's fees. Although plaintiff may have focused on the wrong actor, because the summary judgment record does not create an issue of fact regarding bad faith by plaintiff in the question of Erickson's nonjoinder, I grant summary judgment to plaintiff on defendants' request for attorney's fees to the extent defendants should prevail on the nonjoinder portion of their section 256 claim.

In defendants' response to plaintiff's concise statement of facts, filed by defendants in opposition to plaintiff's summary judgment motion, defendants cite to portions of deposition testimony from plaintiff, Mike Dennis, and John Dickinson, OA's patent counsel. Defts' Resp. to Pltf's CSF at ¶ 8. The cited evidence indicates that (1) both Mike Dennis and plaintiff communicated to Dickinson about certain patents, (2) in terms of identification of inventors, that plaintiff and Mike Dennis, on one occasion in 1998, indicated they were both inventors as to an unidentified product and that Dickinson did not recall either Mike Dennis or plaintiff identifying anyone else, (3) plaintiff believed Erickson had a role in

testing a product, possibly a "KLU kit," and that Baxter or Erickson might have been involved in the development team of that product, and (4) if Erickson's or Baxter's contribution could be considered "patentable novelty" as to the KLU kit, plaintiff believed it was Mike Dennis's role to inform Dickinson of that. *Id.*

It is defendants' burden to come forward with some evidence capable of creating a material issue of fact, on the question of whether plaintiff somehow acted with deception or in bad faith in Erickson's failure to be listed as a named inventor on the relevant patents. Defendants fail to meet that burden with this evidence. Accordingly, I grant plaintiff's motion on the section 285 claim, in part, to the extent that the claim seeks fees for any success on the section 256 claim to correct the nonjoinder of Erickson.

## V. Rescission Claim—Plaintiff's Motion

In this claim, plaintiff seeks rescission of the patent assignments he made to MJD, and a declaration and permanent injunction that he is the joint owner of an undivided interest in the patents either because they are void for lack of consideration or, alternatively, because they were obtained by fraud. Sec. Am. Compl. at ¶ 32. Plaintiff seeks summary judgment on this claim, arguing that the patent assignments are void and reinstatement of plaintiff's interest must occur because there is no dispute that there was an absence of consideration supporting the assignment.

■ Although plaintiff accurately suggests that the modification of a contract must be supported by consideration, *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 148, 26 P.3d 785, 792 (2001) ("It is axiomatic that parties to a contract may modify that contract by mutual assent[;] ... [s]uch a modification must be sup-

ported by consideration") (citation omitted), the problem here is that the issue of the parties' contract terms remains in dispute.

The written ICA contains an explicit confidentiality provision which provides that any "confidential information" whether developed by plaintiff or not, "shall at all times be Oregon Aero's exclusive property." Exh. B to May 1, 2006 Griffin Affid. at pp. 4–5. "Confidential Information" is defined to include OA's inventions created by an OA employee or by plaintiff. *Id.* The written ICA expressly provides that the term inventions is to be construed broadly and includes any idea, invention, etc., created, conceived, or developed by plaintiff or under his direction, whether solely or with others. *Id.*

If the written ICA governs the parties' relationship, it appears to give ownership rights in the patents to OA in the first instance. Thus, plaintiff would not have had an ownership interest to assign to MJD and cannot base a rescission claim on the lack of consideration for an assignment that was, essentially, superfluous.

However, I note that if the written ICA does not control, plaintiff has a strong argument on the rescission claim because Mike Dennis himself states that plaintiff was given nothing new or in addition to what plaintiff had been receiving all along, in consideration for his assignment of the patents to MJD. Mike Dennis Depo. at pp. 143–44.

In supplemental briefing following oral argument, defendants contend that plaintiff's independent contractor status itself created a duty to assign the patents to defendants and thus, no additional consideration is required to render the assignments valid. I reject this argument. Defendants principally rely on a 1993 District of Colorado case to argue that even though plaintiff was not an employee of OA, the fact that he was hired specifically to design and invent means he has no ownership rights to the patents he produced while performing these services for OA.

The problem with defendants' position is that the case, *Computer Associates Int'l v. American Fundware, Inc.*, 831 F.Supp. 1516 (D.Colo.1993), did not involve patent rights. Rather, it addressed ownership rights by an independent contractor to trade secrets. The plaintiff computer software company moved for summary judgment on an unfair competition counterclaim brought by the defendant, on the basis that the claim was barred by the "*NoerrPennington* doctrine," under which "those who petition government for redress are generally immune from antitrust liability." *Id.* at 1521 (internal quotation omitted). As the court explained, "[i]n the adjudicatory setting, the *Noerr–Pennington* doctrine protects a litigant from antitrust liability unless his opponent can establish that the litigant's case is a sham." *Id.*

In addressing this "sham" exception, the court discussed the defendant's argument that the plaintiff's claims in litigation were objectively baseless because the plaintiff did not own the computer software programs at issue as they were owned by the independent contractors who were hired to produce them. *Id.* at 1524. The court rejected the defendant's argument. The court noted that under the common law of trade secrets, when an employer pays an employee to design, the employer owns the "fruits of [the employee's] labor." *Id.*

The court then extended this "ownership rule" to employee ideas and developments, which, it stated, meet the definition of a trade secret. *Id.* Then, the court, quoting a trade secrets treatise, concluded that the rule is extended to nonemployment situations so that an independent contractor should be considered equivalent to an employee hired to develop an idea, with the

results of his or her work owned by the hiring company. *Id.*[5]

■ Defendants argue that trade secrets are sufficiently analogous to patents and that I should apply the reasoning in the Colorado case to the situation here and conclude that even though plaintiff was an independent contractor of OA, his work is owned by OA because he was hired to create or design. I am unwilling to extend the reasoning in *Computer Associates* without some authority that it applies to patents. First, *Computer Associates* is not binding on this court. Second, the discussion in the case relied on by defendants arose in an entirely different context than presented here. Third, the case was confined to trade secrets, not patents. Fourth, while trade secrets may share some similarities to patents (development of an idea and development or design of a process or machine), there are notable differences. *See Cataphote Corp. v. Hudson,* 422 F.2d 1290, 1293 (5th Cir.1970) (trade secret creates opportunity to obtain an advantage over competitors who do not know of or use it; patent laws establish a monopoly for the purpose of encouraging invention and the arts; the trade secret is protected by being kept secret and the patent is protected after being spread on the public records for all to see). Thus, I do not extend the holding of *Computer Associates* to the facts of this case.

Defendants also assert that as a fiduciary, plaintiff was bound to assign the patents to OA. Defendants' argument is initially premised on its theory that the provisions in the written ICA created a fiduciary relationship between plaintiff and OA. For the reasons explained above, there are material issues of fact precluding a determination on summary judgment regarding whether the written ICA governed the parties' relationship despite its lack of signatures.

To the extent defendants' argument is premised on a fiduciary duty emerging from the parties' oral agreement, I conclude that the record is similarly undeveloped in regard to the terms of that agreement. Thus, while fiduciary duties may exist in an agency relationship, including one of independent contractor—contractee, I cannot ascertain whether the oral agreement in this case created such fiduciary duties.

More importantly, the cases defendants cite in support of this argument concern the fiduciary duty of corporate officers to assign patents to a corporation. Defendants argue that the fact that plaintiff was not a corporate officer is irrelevant because it is not the title, but the nature of the position that determines whether a fiduciary responsibility exists. *Id.* But, while the title of corporate officer itself may not determinative, the cases all concern the fiduciary duties owed by an *employee* of the corporation and do not address the fiduciary duties of an independent contractor. Thus, defendants fail to cite support for the proposition that the fiduciary duties

---

**5.** In a "see, e.g." cite, the court also cited a 1991 Ninth Circuit case, *Lamb–Weston, Inc. v. McCain Foods, Ltd.,* 941 F.2d 970, 972–73 (9th Cir.1991), with the following explanatory parenthetical: "(affirming grant of preliminary injunction to potato processor holding trade secret in blade system developed by independent contractor)."

Lamb–Weston, however, involved a situation where the independent contractor orally agreed to keep the plaintiff's information confidential and then later signed a written confidentiality agreement. *Id.* at 972, 973 n. 2. The case involved a claim of misappropriation of trade secrets and the relevant issue resolved by the court was whether there was a confidential relationship between the party asserting trade secret information and the party who disclosed the information; the issue was not one of ownership of a design idea by the independent contractor.

owed as part of an independent contractor relationship extend beyond those of loyalty or confidentiality, and include the actual assignment of patents to the contractee. Without any such authority, I reject defendants' argument.[6]

In summary, on this claim, I deny plaintiff's motion on the rescission claim because the issue of whether the written ICA controls the parties' relationship cannot be resolved.

## VI. Conversion Claim—Plaintiff's Motion

Plaintiff contends that in obtaining the assignments of plaintiff's ownership rights to the patents to MJD, defendants intended to exercise dominion and control over plaintiff's rights and in doing so, interfered with plaintiff's right to possession of his undivided interest in the patents. Sec. Am. Compl. at ¶ 35. Plaintiff contends that as a result of defendants' conversion of plaintiff's patent rights, plaintiff is entitled to damages in the amount of the market value of the patents of $3,500,000. *Id.* at ¶ 36. Plaintiff also seeks punitive damages based on his assertion that defendants' conduct was intentional, willful, in violation of acceptable conduct, and calculated to have plaintiff forfeit his extremely valuable ownership rights and royalties. *Id.* at ¶ 37.

■ In Oregon, " '[c]onversion is an intentional exercise of dominion or control over a chattel which so interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' " *Mustola v. Toddy,* 253 Or. 658, 663–64, 456 P.2d 1004, 1007 (1969) (quoting Restatement (Second) of Torts § 222A (1965)); *see also Hemstreet v. Spears,* 282 Or. 439, 444, 579 P.2d 229, 233 (1978) (reaffirming use of Restatement).

Oregon courts follow a traditional formulation of the tort which includes examining various factors to determine the seriousness of the interference and the justice in requiring the actor to pay the full value as a consequence of a forced judicial sale of the chattel. *See Mustola,* 253 Or. at 663–64, 456 P.2d at 1007 (quoting Restatement's list of six factors).

Plaintiff moves for partial summary judgment on the conversion claim because, plaintiff argues, it is undisputed that defendants exercised, and continue to exercise, dominion and control over plaintiff's patent rights by means of the assignments to MJD and that the assignments are not enforceable due to the lack of consideration or fraud. In essence, plaintiff seeks summary judgment on the issue of liability, and leaves for trial the value of the patent rights that plaintiff alleges defendants converted, because, plaintiff asserts, there are no material disputes that defendants exercise such dominion and control over plaintiff's property interests such that they should be required to purchase those interests.

■ I deny the motion because the issue of whether plaintiff had any ownership rights to the patents remains outstanding. If defendants prevail in their argument that the written ICA governs the parties' relationship, the evidence suggests that the assignment of the patents was consistent with the terms of the written ICA and thus, defendants would not be liable for conversion. However, if defendants do not prevail in that argument, then the relevant question is whether the oral contract, whose terms are still unknown other than the compensation provision, gave defendants enough of a claim or stake in the patents to exercise the level of

<hr>

**6.** Because of my conclusion here, I deny plaintiff's motion to strike defendants' sub-

mission of supplemental authority as moot.

control over the patents that defendants have actually exercised, to avoid liability for conversion. Because the record does not contain the relevant facts, I deny the motion directed to the conversion claim.

## VII. Breach of Fiduciary Duty Counter-claim—Plaintiff's and Defendants' Motions

In this counterclaim, OA contends contend that while plaintiff provided consulting services to OA from 1997 to 2005, he was privy to OA's valuable confidential and proprietary information, and was under a duty to maintain the confidentiality of such information. Answer at ¶ 87. OA asserts that plaintiff owed OA the fiduciary duties of loyalty, good faith, and full disclosure. *Id.* at ¶ 88. OA further contends that plaintiff breached his fiduciary duty to OA in a number of specific ways. *Id.* at ¶ 89.

Plaintiff moves for summary judgment on this counterclaim because, plaintiff argues, there is no fiduciary duty owed in the context of an independent contractor agreement and alternatively, there was no breach of any duty in any event. OA moves for summary judgment, arguing that a fiduciary relationship arises out of plaintiff's agency relationship with OA.

As noted above in the discussion of plaintiff's rescission claim, I cannot grant summary judgment to either party on the question of whether there was a fiduciary duty owed by plaintiff to OA based on either the written ICA or the oral agreement because the relevant terms of the latter are not in this record and the record does not allow resolution of whether the former actually governed the parties' relationship. Moreover, as noted above, I reject defendants' arguments that independent of any terms of either the oral agreement or a written one, a fiduciary duty regarding patent rights is automatically implied into any independent contractor—contractee relationship.

■■■ Even assuming, however, for the purposes of this motion, that plaintiff owed OA fiduciary duties of confidentiality and non-competition, I grant plaintiff's motion on this claim and deny defendant's motion. The only breach of fiduciary alleged by defendant in this motion is that plaintiff possessed a secret intent not to comply with the confidentiality and non-competition provisions of the written ICA. The record is devoid of any evidence that plaintiff took any actions in furtherance of this alleged secret belief. Without such conduct, defendant's claim fails. *Western Med. Consultants,* 835 F.Supp. at 559 (employee who was subject to express non-compete agreement did not breach fiduciary duty by failing to tell her employer that she might compete with it in Alaska market).

## VIII. Fraudulent Inducement Counter-claim—Plaintiff's Motion

OA alleges that throughout the contract discussions and negotiations between OA and plaintiff, plaintiff represented that (1) all "inventions" whether or not developed by plaintiff, were OA's exclusive property; (2) he would not compete with OA; and (3) commission payments would end upon termination of the contract. Answer at ¶ 92. OA further alleges that despite these representations, plaintiff had no intention of honoring them. *Id.* at ¶ 93. OA asserts that plaintiff misrepresented that he would perform according to the agreement between the parties and concealed his true intention that he would not abide by it. *Id.*

OA contends that plaintiff acted intentionally so as to induce OA to enter into the agreement, and any modifications thereto, and to permit plaintiff to fraudulently obtain compensation and benefits from OA. *Id.* OA further contends that it relied on plaintiff's representations that he

had agreed to the terms of the contract and any modification thereto, that plaintiff's misrepresentations were material, and that OA would not have gone forward with the agreement, and any modifications thereto, had it known that plaintiff had no intention of performing as required by the terms of the agreement. *Id.* at ¶ 94.

Plaintiff moves for summary judgment on this counterclaim. Plaintiff argues that because the written ICA is not a binding contractual agreement, there were no representations made. Although OA sought such promises in presenting draft agreements, no such promises were obtained from plaintiff because the agreement was never signed. Additionally, as noted above, plaintiff did not state in deposition that he lacked the present intent to comply with the confidentiality and non-compete provisions of the written ICA at the time the written ICA was being negotiated, but rather stated that in retrospect, because the written ICA was not signed, he would have had the right to compete from day one.

▮ I deny plaintiff's motion on this claim because of the presence of questions of historical fact relevant to contract formation and specifically, relevant to the issue of whether the written ICA governs the parties' relationship. This is a fundamental question requiring resolution before I can determine, as a matter of law, if plaintiff made any binding representations during the negotiation process and whether they were made with no intent of performance.

## IX. Unjust Enrichment Counterclaim—Plaintiff's Motion

Plaintiff moves for summary judgment on this counterclaim in which OA contends that based on plaintiff's alleged failure to disclose that he did not intend to be bound by the parties' agreement regarding the ownership of the inventions, and the non-compete and confidentiality provisions of the written ICA, his continued acceptance of compensation in an amount not less than $1,057,945.60, unjustly enriched him and damaged defendants.

▮ I deny plaintiff's motion on this claim because, as stated throughout this Opinion, the record does not allow a determination at this point as to whether the written ICA controlled the parties' relationship, and the record does not contain all of the relevant and material terms of the preceding oral agreement. Thus, without knowing which agreement governs, or the terms of the oral agreement, I cannot determine whether the compensation paid to plaintiff was "unjust" in the sense that OA conferred a benefit on plaintiff (the compensation) under circumstances making it unjust for plaintiff to retain it. *E.g., Winters v. County of Clatsop,* No. 03–2129 A124361, 2007 WL 10414, at *2 (Or.App. Jan. 3, 2007) ("It is well-settled that, to establish unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it.").

## X. Breach of Duty of Good Faith Counterclaim—Defendants' Motion

Defendants move for summary judgment on this counterclaim. Defendants argue that pursuant to the implied duties of good faith and fair dealing, plaintiff was required to act in a manner to avoid "the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Defts' Mem. at p. 15. Defendants contend that plaintiff breached these duties when he continued to accept compensation from defendants while at the same time, concealing his belief that he

was not subject to the confidentiality and non-competition provisions of the written ICA.

■■■■ The duty of good faith and fair dealing "serves to effectuate the objectively reasonable expectations of the parties" and "may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue[.]" *Gibson v. Douglas County,* 197 Or.App. 204, 217, 106 P.3d 151, 158 (2005). The duty does not expand the substantive duties under a contract; rather, it relates to the performance of the contract. *See Zygar v. Johnson,* 169 Or.App. 638, 645, 10 P.3d 326, 330 (2000) (a party's duty of good faith in the performance of a contract cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract).

■■■■ Here, without knowing the governing contract terms, plaintiff's alleged conduct cannot be adjudged as breaching the implied duties of good faith and fair dealing. The law requires that the express contractual duties be examined first and the parties' performance examined against the backdrop of those express duties. Accordingly, I deny defendants' motion on this counterclaim.

## XI. Statute of Frauds Affirmative Defense—Defendants' Motion

In this affirmative defense, defendants simply state that "[p]laintiff's breach of contract claim is barred by the statute of frauds." Answer at ¶ 41. Plaintiff's breach of contract claim asserts, as noted above, that Mike Dennis represented that plaintiff would be paid royalties on the sales of patented products after he assigned the patents to MJD. Plaintiff alleges that Mike Dennis repeated this representation on more than one occasion. Sec. Am. Compl. at ¶¶ 15, 17. Plaintiff then contends that in January 2005, defendants

withdrew their offer to pay royalties and thus, in February 2005, plaintiff ceased working for OA. *Id.* at ¶ 21. Plaintiff contends that defendants' failure to pay the promised royalties breached the parties' agreement and damaged plaintiff in an amount of at least $3,000,000 in the years 2005 through 2007. *Id.* at ¶ 23.

Defendants seek summary judgment on this affirmative defense on the basis that the oral contract regarding royalty payments is unenforceable under the statute of frauds because the agreement would extend beyond one year. I deny the motion.

Oregon statutes provide that an agreement that by its terms is not to be performed within a year from the making, is void unless memorialized in a writing. Oregon Revised Statute § (O.R.S.) 41.580(1)(a). As explained by the Oregon Court of Appeals:

"In general, a verbal stipulation to render some particular service which fixes no definite or contingent time for its performance, but which is capable of performance within one year after the same is made, is not controlled by the statute, although the act probably will not be, and was not expected to be fulfilled within that time."

*Kaiser Foundation Health Plan of the Northwest v. Doe,* 136 Or.App. 566, 578, 903 P.2d 375, 382 (1995) (quoting *Duniway v. Wiley,* 85 Or. 86, 89, 166 P. 45 (1917)), *modified,* 138 Or.App. 428, 908 P.2d 850 (1996).

■■■■ Here, as plaintiff notes, nothing in the oral agreement regarding the royalty payments prevented defendants from performing its alleged promise within one year after it was made. Because the oral contract could have been performed within one year, the fact that it probably would not be, or was not expected to be, does not

make the oral contract void under the statute of frauds.

 Additionally, "a contract that would be void under a literal reading of the statute is rendered enforceable in equity if the party seeking to avoid the statute has partially performed the oral contract." *Siegner v. Interstate Prod. Credit Assoc. of Spokane,* 109 Or.App. 417, 432, 820 P.2d 20, 30 (1991) (citing *Engelcke v. Stoehsler,* 273 Or. 937, 944, 544 P.2d 582 (1975)).

 The doctrine of part performance provides for enforcement of an oral agreement if (1) "there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud," and (2) "if there are equitable grounds for enforcing the contract whether those grounds are found in facts justifying the avoidance of unjust enrichment or relief from fraud." *In the Matter of the Marriage of DeCair,* 131 Or.App. 413, 420, 885 P.2d 736, 740 (1994) (internal quotation and emphasis omitted).

Here, it is undisputed that plaintiff assigned the patents to MJD, which, if plaintiff's asserted facts are to be believed, is conduct corroborating and unequivocally referable to the oral agreement. If plaintiff owned the patents in the first instance and they did not become the property of OA under the written ICA, and if defendants orally represented that plaintiff would receive patent royalties in exchange for assigning the patents to MJD, and failed to pay them, there may be grounds for equitably enforcing the oral royalty payment contract.

 Finally, as plaintiff notes, when facts suggest that one party to the oral contract may have induced the other party to act based on a false representation made by the first party with knowledge of the facts and with the intention that it be

acted upon by the other party, and the other party was ignorant of the truth, the first party may be estopped from asserting the statute of frauds. *Siegner,* 109 Or. App. at 423, 820 P.2d at 30. Here, plaintiff contends that the patent assignments were induced by defendants' misrepresentations. Assuming the truth of the facts in plaintiff's favor, defendants may be estopped from asserting the statute of frauds.

## CONCLUSION

I deny defendants' motion for summary judgment (# 64) and I grant in part and deny in part plaintiff's motion for summary judgment (# 59). Plaintiff's motion to strike defendants' supplemental submission (# 108) is denied as moot.

IT IS SO ORDERED.